Anna Y. Park, SBN 164242
Sue J. Noh, SBN 192134
Rumduol Vuong, SBN 264392
Nakkisa Akhavan, SBN 286260
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
255 East Temple Street, Fourth Floor
Los Angeles, CA 90012
Telephone: (213) 894-1083
Facsimile: (213) 894-1301
E-Mail: lado.legal@eeoc.gov

Attorneys for Plaintiff
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>MERRITT HOSPITALITY, LLC; HEI HOTELS AND RESORTS LLC; and DOES 1-10, inclusive,<br><br>　　　　Defendants. | Case No.: '18CV0654 MMA AGS<br><br>**COMPLAINT—ADA**<br>• **Disability Discrimination (Discharge)**<br>• **Denial of Reasonable Accommodation**<br>• **Failure to Engage in Interactive Process** |

## NATURE OF THE ACTION

　　This is an action under the Americans with Disabilities Act of 1990 ("ADA"), as amended by the ADA Amendments Act of 2008 ("ADAAA"), to correct unlawful employment practices based on disability and to provide appropriate relief to Charging Party Katherine Salvagno ("Charging Party" or

1  "Salvagno") who was adversely affected by such practices. As set forth with
2  greater particularity in paragraph 13 to 59 of this Complaint, Plaintiff United States
3  Equal Employment Opportunity Commission ("Plaintiff" or "EEOC") alleges that
4  Defendant Merritt Hospitality, LLC, Defendant HEI Hotels and Resorts, LLC, and
5  DOES 1-10 ("Defendants") failed to engage in the interactive process, denied
6  Charging Party Salvagno a reasonable accommodation, and subjected her to
7  adverse employment actions on the basis of her disability in violation of Section
8  102 of the ADA, 42 U.S.C. § 12112.

## JURISDICTION AND VENUE

10  1.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451,
11  1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to
12  Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, and Section 107(a)
13  of the ADA, 42 U.S.C. §12117(a) (incorporating the powers, remedies, and
14  procedures set forth in Sections 706 of Title VII of the Civil Rights Act of 1964
15  ("Title VII"), 42 U.S.C. §§ 2000e-5, into ADA enforcement actions).
16  2.  The employment practices alleged to be unlawful were and are now
17  being committed within the jurisdiction of the United States District Court for the
18  Southern District of California.

## PARTIES

20  3.  Plaintiff is an agency of the United States of America charged with
21  the administration, interpretation and enforcement of the ADA, and is expressly
22  authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. §
23  12117(a), which incorporates by reference § 706(f)(1) of Title VII, 42 U.S.C. §
24  2000e-5(f)(1).
25  4.  At all relevant times, Defendant Merritt Hospitality, LLC ("Merritt
26  Hospitality") has been a limited liability company continuously been doing
27  business in the City of San Diego, County of San Diego.
28  5.  At all relevant times, Merritt Hospitality has continuously been a

limited liability company doing business in the State of California, and continuously had at least 15 employees.

6. At all relevant times, Defendant Merritt Hospitality has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) and (h).

7. At all relevant times, Defendant HEI Hotels and Resorts LLC ("HEI") has been a limited liability company doing business in the City of San Diego, County of San Diego.

8. At all relevant times, Defendant HEI has continuously been a limited liability company doing business in the State of California, and has continuously had at least 15 employees.

9. At all relevant times, Defendant HEI has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) and (h).

10. At all relevant times, Defendants HEI and Merritt Hospitality were doing business as the Embassy Suites San Diego Bay Hotel.

11. All acts and failures to act alleged herein were duly performed by and attributable to all Defendants, each acting as a successor, agent, alter ego, employee, indirect employer, joint employer, integrated enterprise and/or or under the direction and control of the others, except as specifically alleged otherwise. Said acts and failures to act were within the scope of such agency and/or employment, and each Defendant participated in, approved and/or ratified the unlawful acts and omissions by the other Defendants complained of herein. Whenever and wherever reference is made in this Complaint to any act by a

Defendant or Defendants, such allegations and reference shall also be deemed to mean the acts and failures to act of each Defendant acting individually, jointly, and/or severally.

12. Plaintiff is ignorant of the true names and capacities of each defendant sued as DOES 1 through 10, inclusively, and therefore Plaintiff sues said defendants by fictitious names. Plaintiff reserves the right to amend the complaint to name each DOE defendant individually or corporately as it becomes known. Plaintiff alleges that each DOE defendant was in some manner responsible for the acts and omissions alleged herein and Plaintiff will amend the complaint to allege such responsibility when the same shall have been ascertained by Plaintiff.

## STATEMENT OF CLAIMS

13. More than thirty days prior to the institution of this lawsuit, Charging Party Salvagno filed a charge of discrimination with Plaintiff alleging violations of the ADA by Defendants at the Embassy Suites San Diego Bay Hotel.

14. Subsequent to the charge of discrimination, the Commission investigated the allegations by Charging Party Salvagno against Defendants' employment practices at the Embassy Suites San Diego Bay Hotel.

15. On September 12, 2017, the Commission issued to Defendants HEI and Merritt Hospitality a Letter of Determination finding reasonable cause to believe that Defendants had violated the ADA and invited Defendants to join with the Commission in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

16. The Commission engaged in communications with Defendants to provide Defendants the opportunity to remedy the discriminatory practices described in the Letter of Determination.

17. The Commission was unable to secure from Defendants a conciliation agreement acceptable to the Commission.

18. On November 30, 2017, the Commission issued to Defendants a

Notice of Failure of Conciliation.

19. All conditions precedent to the institution of this lawsuit have been fulfilled.

20. Since at least March 2015, Defendants have engaged in unlawful employment practices in violation of Section 102 (a) and (b) of ADA, 42 U.S.C. § 12112 (a) and (b), by:

    a. Failing to engage in the interactive process and failing to provide a reasonable accommodation for Charging Party Salvagno; and

    b. Discharging Charging Party Salvagno because of her disability when Defendants terminated Charging Party Salvagno because she repeatedly requested a reasonable accommodation.

21. On February 24, 2015, Defendants extended a written offer of employment on behalf of Merritt Hospitality d/b/a HEI Hotels and Resorts for a full-time position of Conference Services/Catering Sales Manager at the Embassy Suites San Diego Bay Downtown, effective March 12, 2015. Charging Party Salvagno's offer letter stated that she would report to Brandi Baker, Director of Sales and Marketing ("Supervisor Baker").

22. On March 3, 2015, Charging Party Salvagno signed an "Associate Acknowledgement" form acknowledging receipt of the HEI Hotels & Resorts Handbook, which "outlines the Company's policies…."

23. On March 11, 2015, Charging Party Salvagno began working for Defendants as a Conference Services/Catering Sales Manager at the Embassy Suites San Diego Bay in San Diego, California.

24. Charging Party Salvagno was diagnosed with asthma and allergies in 1996. She has used various treatments to control her asthma and allergies including, but not limited to, inhalers, allergy medications, antibiotics, and steroids.

25. On her first day, March 11, 2015, Charging Party Salvagno was placed in a work area in a building outside of the hotel with only one door and no windows that lacked adequate ventilation. The air conditioner for the building was also broken.

26. Charging Party Salvagno began experiencing symptoms related to her asthma and allergies, which substantially impacted several life functions, including but not limited to: severe congestion, severe sinus pressure, persistent coughing and wheezing, trouble breathing, and severe tightness in her chest.

27. Charging Party Salvagno told her immediate supervisor, Brandi Baker, via text message after she completed her first day of work that she had a chronic health issue and the lack of ventilation in the office was making her sick. Charging Party Salvagno requested an opportunity to identify a solution. Supervisor Baker agreed to discuss Charging Party Salvagno's issue the next day.

28. The next day, March 12, 2015, Charging Party Salvagno continued to suffer the same symptoms due to the lack of air circulation.

29. Charging Party Salvagno met with Supervisor Baker on March 12, 2015. Supervisor Baker told Charging Party Salvagno that the air conditioning had been broken since before the Summer of 2014 and she was not sure when or if it would be fixed. Supervisor Baker also told her that no other employee had an issue and she did not understand why Charging Party Salvagno did.

30. Charging Party Salvagno explained to Supervisor Baker that she had a chronic health issue and that the need for air circulation and/or ventilation was not a matter of preference. Charging Party Salvagno specified that she had allergies, sinusitis, and asthma and that her condition was triggered by the absence of ventilation and/or air circulation.

31. Supervisor Baker told Charging Party Salvagno that she should have disclosed her health issue during the interview process because Defendants would not have hired her if they had known about her condition. Supervisor Baker

provided no alternatives or accommodations.

32. Charging Party Salvagno's condition continued to worsen with more sinus pain, difficulty breathing, wheezing, and increased tightness in her chest.

33. On her third day of work, March 13, 2015, Charging Party Salvagno again reiterated her request for a reasonable accommodation to Supervisor Baker.

34. Supervisor Baker, Charging Party Salvagno, and Defendants' General Manager, Rob Kravitz ("GM Kravitz"), met in GM Kravitz's office in the main hotel building to discuss her need for air circulation and/or ventilation.

35. Like Supervisor Baker, GM Kravitz also told Charging Party Salvagno that no one else had this issue and he did not understand why it bothered Charging Party Salvagno.

36. Charging Party Salvagno reiterated that it was not a matter of preference and was a chronic health issue. She explained that certain environments can trigger her chronic health condition.

37. GM Kravitz also told Charging Party Salvagno that he did not know if or when the air conditioning would be fixed and that even if it were fixed, it would not necessarily mean Defendants would turn it on.

38. Charging Party Salvagno requested that GM Kravitz ask HEI to fix the air conditioner because the lack of ventilation was exacerbating her health issue. GM Kravitz said he could try but there were no guarantees that HEI would agree.

39. Charging Party Salvagno also asked whether she could be moved to another work station inside the hotel, at least until the air conditioning was fixed. Charging Party Salvagno informed GM Kravitz that she was already feeling better just being inside the hotel in his office where the air was ventilated. GM Kravitz responded that there was nowhere to move Charging Party Salvagno.

40. GM Kravitz gave Charging Party Salvagno a broken fan that hardly worked to take back to her work station outside the hotel. In conjunction with other

employees leaving on space heaters that made the space hotter, dustier, and more humid, the fan ultimately only pushed around hot air and dust, which did not help Charging Party Salvagno's condition.

41. On her fourth day of work, March 16, 2015, Charging Party Salvagno called in sick due to her allergies, asthma, and sinus pain, which had persisted through the weekend. Charging Party Salvagno saw her primary care physician that day, who told her that she had to remove herself from the environment that was triggering her illness; otherwise, her medication would not be effective enough to improve her condition.

42. Charging Party Salvagno also received a doctor's note from her primary care physician.

43. The doctor's note dated March 16, 2015 stated, "Ms. Kathryn Salvagno has been my patient at the San Diego VA Medical Clinic since June 2000. She has requested confirmation in this letter that she was seen and treated today by my clinic for asthma and allergies. It is my recommendation that she stay home and rest after treatment at the clinic today."

44. The doctor's note further stated, "Ms. Salvagno's allergies are verified by allergy skin testing, and her asthma is severe enough to warrant several emergency room visits, nebulizer treatments, and steroid tapers. Although her asthma and allergy symptoms are better controlled with medications, she still must avoid environmental triggers in order to prevent another exacerbation/asthma attack. This would include being in a well ventilated, cool work space and not being exposed to strong scents such as perfumes, scented candles/sprays, cigarette smoke, etc."

45. On her fifth day of work, March 17, 2015, Charging Party Salvagno provided her doctor's note to Supervisor Baker.

46. Charging Party Salvagno had to leave work early on March 17, 2015, due to the continued exacerbation of her condition as a result of her unventilated

work environment.

47. Charging Party Salvagno's condition was exacerbated so much that she had to go to the emergency room that day.

48. Charging Party Salvagno was in the hospital overnight and was discharged early the next morning, March 18, 2015.

49. On Wednesday, March 18, 2015, Charging Party Salvagno called Supervisor Baker to let her know she had just been discharged from the emergency room and would not be able to come into work that day.

50. Supervisor Baker did not return Charging Party Salvagno's call on March 18, 2015, or thereafter.

51. The same day, Charging Party Salvagno received a call from Defendants' Human Resources Director, Rene Servin ("HR Director Servin").

52. HR Director Servin stated that he was not aware of Charging Party Salvagno's situation until that day.

53. HR Director Servin assured Charging Party Salvagno there would be some way to accommodate her condition before she returned to work.

54. HR Director Servin told Charging Party Salvagno he would check with GM Kravitz and get back to her.

55. On Thursday, March 19, 2015, HR Director Servin called Charging Party Salvagno and told her that he had spoken with GM Kravitz and there was nothing Defendants could do to accommodate her.

56. HR Director Servin asked Charging Party Salvagno to email him her letter of resignation and provide him a current address to send her paycheck.

57. On Thursday, March 19, 2015, Charging Party Salvagno emailed HR Director Servin and stated, in relevant part, "Thank you for getting back to me and letting me know that Embassy Suites will not be able to offer a reasonable accommodation for my asthma/allergy health issue. I am very disappointed as I really wanted things to work out and was excited to work at the hotel. However,

since the first day I started to work, I expressed to my boss, Brandi about my difficulty breathing in the office due to no ventilation and let her know of my asthma/allergies. I spoke with Brandi about it each day trying to see if there could be a solution. I also spoke with the General Manager about it. I have a genuine fear for my health and safety after ending up with an asthma attack that resulted in a doctor's visit on Monday and an overnight stay in the emergency room on Tuesday. And, based upon the advice of my doctors, I need to be in a ventilated office or I will keep having these asthma/allergy attacks."

58. HR Director Servin responded via email on Thursday, March 19, 2015, and stated, "It is unfortunate that due to the health concerns you are not able to return to work. I totally understand that health comes first and hope that you recover soon. I will use this email as your resignation as mentioned in our earlier phone call and also have spoken with Rob our General Manager and he agreed that you should be paid for the full day on Tuesday…I would like to wish you the best in your recovery and as mentioned in our call, you are invited to reapply to any open position once you have recovered from your illness."

59. Charging Party Salvagno could have immediately returned to work with the reasonable accommodation of being provided a workspace that had adequate ventilation and/or air circulation.

60. The effect of the practices complained of in paragraphs 13 to 59 above has been to deprive Charging Party Salvagno of equal employment opportunities and otherwise adversely affects her status as an employee because of her disability.

61. The unlawful employment practices complained of in paragraph 13 to 59 above were intentional and caused Charging Party Salvagno to suffer emotional distress.

62. The unlawful employment practices complained of in paragraphs 13 to 59 above were and are done with malice or with reckless indifference to the federally protected rights of Charging Party Salvagno.

# PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.  Grant a permanent injunction enjoining Defendants, their officers, successors, assigns, and all persons in active concert or participation with each of them, from engaging in any employment practices which discriminate based on disability.

B.  Order Defendants to institute and carry out policies, practices, and programs to ensure that they would not engage in unlawful employment practices in violation of § 102(a) and (b), 42 U.S.C. § 12112(a) and (b).

C.  Order Defendants to make whole Charging Party Kathryn Salvagno by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to back pay.

D.  Order Defendants to make Charging Party Kathryn Salvagno whole by providing compensation for past and future pecuniary losses, including but not limited to out-of-pocket expenses suffered by her which resulted from the unlawful employment practices described above in the amounts to be determined at trial.

E.  Order Defendants to make Charging Party Kathryn Salvagno whole by providing compensation for non-pecuniary losses resulting from the unlawful employment practices described above in amounts to be determined at trial.  The non-pecuniary losses include emotional pain, suffering, inconvenience, mental anguish, humiliation and loss of enjoyment of life, in amounts to be determined at trial.

F.  Order Defendants to pay Charging Party Kathryn Salvagno punitive damages for their malicious and/or reckless conduct in an amount to be determined at trial.

G.  Award the Commission its costs of this action.

H.   Grant such further relief as the Court deems necessary and proper in the public interest.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Dated: March 30, 2018        Respectfully Submitted

JAMES LEE,
Deputy General Counsel

GWENDOLYN YOUNG REAMS,
Associate General Counsel

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
131 "M" Street, N.E.
Washington, D.C. 20507

By: /s/ Anna Park  *signed by D.L. as authorized to sign by Anna Park*

ANNA Y. PARK,
Regional Attorney

SUE J. NOH,
Supervisory Trial Attorney

RUMDUOL VUONG,
Supervisory Trial Attorney

NAKKISA AKHAVAN,
Senior Trial Attorney

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION